# Exhibit A

Reset Form

**INSTRUCTIONS: FILL IN THE NAMES IN THE BOX NUMBER BELOW, THE INDEX NUMBER AND THE DATE THE INDEX NUMBER WAS PURCHASED. COMPLETE ALL BLANKS IN ACCORDANCE WITH THE DIRECTIONS SET FORTH IN BOLD PRINT.**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

-----------------------------------------------------------------x

Sherine Lugo, for herself and on behalf of those similarly situated,
**[YOUR NAME(S)]**

Plaintiff(s),

Index No. _______/__

-against-

Date Index No. purchased ___________

DaVita, Inc.,
**[NAME OF PERSON(S) SUED]**

Defendant(s)

**SUMMONS**

-----------------------------------------------------------------x

To the Person(s) Named as Defendant(s) Above:

PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the complaint of the plaintiff(s) herein and to serve a copy of your answer on the plaintiff(s) at the address indicated below within 20 days after the service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

Dated: September 14, 2026
**[DATE OF SUMMONS]**

Andrew R. Frisch
**[YOUR NAME(S)]**

Morgan & Morgan, P.A.
8151 Peters Rd, 4th FL, Plantation, FL 33324
(954) 318-02868
**[YOUR ADDRESS(ES) and PHONE NUMBER(S)]**

Defendant's Address 1900 W. Littleton Blvd, Littleton, CO 80120
**[ADDRESS OF PERSON(S) SUED]**

Venue: Plaintiff(s) designate(s) Queens County as the place of trial. The basis of this designation is **[CHECK ONE]**:

- [ ] Plaintiff(s)' Residence in Queens County.
- [ ] Defendant(s)' Residence in Queens County.
- [x] Other -- Describe: violations occured in the Queens County.

**NOTE: THIS FORM OF SUMMONS MUST BE SERVED WITH A COMPLAINT**

SUPREME COURT OF NEW YORK
QUEENS COUNTY

Sherine Lugo for herself and on behalf of those similarly situated,

Plaintiff,

-against-

DaVita, Inc.,

Defendant.

Index No.

## CLASS ACTION COMPLAINT

Plaintiff, Sherine Lugo ("Plaintiff"), for herself and on behalf of other employees and former employees similarly situated, by and through undersigned counsel, files this Class Action Complaint against Defendant, DaVita, Inc. ("DaVita" or "Defendant"), and alleges upon knowledge as to herself, and upon information and belief as to all other matters as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this suit as a class action pursuant to Article 9 of the New York Civil Practice Law and Rules ("CPLR"), alleging entitlement to wages, premium pay and penalties for violations of New York Labor Law, Article 19 §§ 650, *et seq*., New York Labor Law Article 6, §§ 190 *et seq*., and the supporting New York Department of Labor regulations (together, "NYLL"), and for violations of the Fair Labor Standards Act 29 U.S.C. §§ 201 *et seq*. ("FLSA") for herself and on behalf of the members of the proposed Class/Collective action defined below. Plaintiff and class members worked as hourly-paid nurses and technicians at DaVita, Inc. ("DaVita" or "Defendant"), a nationwide healthcare provider who is headquartered in Denver, Colorado. Plaintiff and class members did not receive bona fide

meal break periods. Instead, they were required and permitted to work through meal breaks or meal breaks that were subject to interruption for Defendant and were not paid for such time.

2. Furthermore, Plaintiff and class members were not paid for short compensable rest breaks of twenty minutes or less that took place while they were clocked out for this time.

3. An employer is not required to pay an employee for meal periods if the employer can satisfy its burden of showing that the employee received a bona fide meal period. However, Defendant required nurses and technicians at DaVita to remain responsible for patient care throughout their shifts, including during meal periods. Nurses and technicians frequently went without meals, and even when they did attempt to eat, their meal periods were regularly interrupted by work demands.

4. In short, Defendant used the nurses' and technicians' meal periods for the predominant benefit of DaVita. Notwithstanding Defendant's practice of requiring nurses and technicians to be available for work and to in fact work throughout their meal periods, Defendant deducted all time clocked out by nurses and technicians for meal periods (usually thirty minutes) during which they were interrupted and/or subject to interruption, thereby enabling Defendant to receive the benefit of additional unpaid work during each shift worked by class members in which they clocked out for a meal period.

5. Defendant's practice of failing to relieve nurses and technicians of their duties during meal periods, while simultaneously deducting all time clocked out for a meal period (usually thirty minutes) from the total time paid per shift had the effect of depriving nurses and technicians of regular and overtime compensation due to them under the NYLL and

overtime compensation under the FLSA.

6. On information and belief, all of DaVita's non-exempt, hourly-paid direct patient care nurses and technicians who worked in New York during the relevant time frame were subjected to this illegal pay practice.

7. An employer is required to pay for rest breaks of 20 minutes or less, as such breaks are considered to be for the benefit of the employer.

8. Defendant's practice of failing to pay for breaks of twenty minutes or less when employees clocked out for that time also had the effect of depriving nurses and technicians of regular and overtime compensation due to them under the NYLL and overtime compensation under the FLSA.

9. Plaintiff brings this suit under the Class action provisions of the NYLL because she and the putative Class action members are similarly situated under the NYLL in the following particulars: (a) they are or were hourly-paid direct patient care nurses and technicians subject to Defendant's company-wide policy of failing to compensate time for meal periods for which they clocked out but were interrupted, subject to interruption, or otherwise not relieved of duties during the purported "meal break" time; (b) they are and were required and permitted to be available to perform uncompensated work during those meal periods, and in fact did perform uncompensated work during those periods; (c) the meal periods are and were predominantly for the benefit of Defendant; (d) Plaintiff and class members were not paid for rest periods where they were clocked out for less than 20 minutes in duration, and (e) Plaintiff and class members suffered regular wage losses to the extent these unpaid hours were hours under forty hours in a week, and suffered overtime wage losses as a result of Defendant's failure to pay wages at the required overtime rate for these

thirty minutes meal periods and rest breaks in the weeks in which the nurses and technicians worked more than forty hours in a week.

10. Plaintiff brings this action as a Collective Action under the FLSA, as similarly situated nurses and technicians were deprived of overtime compensation due to Defendant's common policies and practices of: (1) failing to pay for meal breaks despite the fact that Defendant knew or reasonably should have known that Plaintiff and those similarly situated were working through such meal breaks; and (2) failing to pay for compensable rest breaks of 20 minutes or less when Plaintiff and those similarly situated were clocked out for same.

11. Accordingly, Plaintiff is similarly situated to the following classes of employees:

**NYLL Class Action:**

**(a) NYLL Meal Break Class:**

**All current and former hourly-paid nurses and technicians employed at all DaVita locations in New York to provide direct patient care at any time during the six (6) years before this Complaint was filed up to the present who, as a result of Defendant's practice of failing to compensate for "meal periods" for which they clocked out, but during which they were not relieved of duties, interrupted and/or subject to interruption, did not receive all of the regular pay during weeks in which they worked forty (40) or fewer hours in a week, and overtime pay to which they were entitled under the NYLL in the weeks of their employment in which said nurses and technicians worked more than forty (40) hours per week.**

**(b) NYLL Rest Break Class:**

**All current and former hourly-paid nurses and technicians employed at all DaVita locations in New York, to provide direct patient care at any time during the six (6) years before this Complaint was filed up to the present who, as a result of Defendant's practice of not paying for rest breaks 20 minutes or shorter in duration, did not receive all of the regular pay during weeks in which they worked forty (40) or fewer hours in a week, and overtime pay to which they were entitled under the NYLL in the weeks of their employment in which said nurses and technicians worked more than forty (40) hours per week.**

12. Plaintiff is also similarly situated to the following putative collective:

**(a) FLSA Meal Break Class:**

**All current and former hourly-paid nurses and technicians employed at all DaVita locations in New York to provide direct patient care at any time during the three (3) years before they opt-in to this matter, plus any applicable tolling, up to the present who, as a result of Defendant's practice of failing to compensate for "meal periods" for which they clocked out, but during which they were not relieved of duties, interrupted and/or subject to interruption, did not receive all of the overtime pay to which they were entitled under the FLSA in the weeks of their employment in which said nurses and technicians worked more than forty (40) hours per week.**

**(b) FLSA Rest Break Class:**

**All current and former hourly-paid nurses and technicians employed at all DaVita locations in New York, to provide direct patient care at any time during the three (3) years before they opt-in to this matter, plus any applicable tolling, up to the present who, as a result of Defendant's practice of not paying for rest breaks 20 minutes or shorter in duration, did not receive all of the overtime pay to which they were entitled under the FLSA in the weeks of their employment in which said nurses and technicians worked more than forty (40) hours per week.**

13. Plaintiff alleges that Defendants DaVita has willfully engaged in a pattern, practice, and policy of unlawful conduct by failing to pay Plaintiffs and similarly situated workers in New York: (1) overtime compensation for all hours worked beyond forty in a workweek; and (2) for all other forms of wages and compensation, including regular hours not compensated through the unlawful practices described herein.

14. Plaintiff alleges the above actions violated their rights to regular and overtime wages under the NYLL, New York Labor Law Article 6, §§ 190, *et seq*., the New York Minimum Wage Act, New York Labor Law §§ 650, *et seq*., New York Labor Law § 193, New York Labor Law, Article 6, §195(1), and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 14, and to overtime wages under the FLSA.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the parties, in that, upon information and belief, Plaintiffs and Defendant either reside in New York, or have significant contacts in New York State.

14. Venue in this country is appropriate in that the events giving rise to Plaintiffs' claims occurred, in a substantial part, in Erie County.

## PARTIES

**Plaintiffs and Class/Collective Action Members**

15. At all times material hereto, Plaintiff worked for Defendant as non-exempt direct patient nurse and/or technician.

16. Plaintiff Sherine Lugo worked as an hourly-paid, non-exempt direct patient nurse for Defendant including in Queens County, New York, between March 14, 2022, and October 1, 2023.

17. The Class Action Members are all of Defendant's current and former hourly-paid, direct patient care nurses and technicians who work or worked at all DaVita locations in New York, six years prior to the filing of this Class Action Complaint to the present, and who are due unpaid regular and overtime wages for (1) compensable work performed during unpaid "meal breaks" as a result of Defendant failing to pay for time classified as a meal break, despite the fact that class members were not relieved of work duties, were interrupted, and/or were subject to interruption during these purported meal breaks, and (2) compensable rest breaks of less than 20 minutes in duration.

18. The Collective Action Members who may join this action (also referred to as "those similarly situated) are all of Defendant's current and former hourly-paid, direct patient care nurses

Case 1:26-cv-06665-RER-SDE Document 1-2 Filed 10/16/26 Page 9 of 23 PageID #: 18

and technicians who work or worked at all DaVita locations in New York for three years before they opt-in to this matter, plus any applicable tolling, up to the present, and who are due unpaid overtime wages for (1) compensable work performed during unpaid "meal breaks" as a result of Defendant failing to pay for time classified as a meal break, despite the fact that class members were not relieved of work duties, were interrupted, and/or were subject to interruption during these purported meal breaks, and (2) compensable rest breaks of less than 20 minutes in duration.

**Defendant DaVita, Inc.**

19. At all times material hereto, DaVita was and continues to be a Delaware Corporation, with its corporate headquarters located in Denver, Colorado.

20. DaVita is one of the largest providers of kidney care services in the United States and has been in the dialysis business for more than 20 years.

21. As of September 2025, DaVita operates at least 192 locations in New York, primarily within the New York City metropolitan area.

22. DaVita has formed a joint venture with Northwell Health, New York's largest healthcare provider, to deliver kidney care across Queens and Long Island.

23. At all times material hereto, Plaintiff was an "employee" of DaVita within the meaning of the NYLL and FLSA.

24. At all times material hereto, DaVita was, and continues to be, an "employer" within the meaning of the NYLL and FLSA.

25. At all times material hereto, DaVita employed Plaintiff within the meaning of the NYLL and FLSA.

26. At all times material hereto, DaVita was, and continues to be, a business engaged in an enterprise engaged in commerce and/or which has two or more employees handling materials which have been moved in or produced for commerce, such as medical supplies, computers and hospital equipment.

27. Based upon information and belief, the annual gross revenue of DaVita is and was in excess of $500,000 per annum for all relevant time periods.

## CLASS ALLEGATIONS

28. This action is properly maintainable as a class action pursuant to Article 9 of the CPLR.

29. This action is brought on behalf of the Plaintiffs, and a putative class consisting of the New York Classes, who are eligible class members that were employed at any time between September 2020 and the present.

30. The putative class is so numerous that joinder of all members is impracticable. The size of the putative class is believed to be in excess of 100 individuals. In addition, the names of all potential members of the putative class are not known.

31. The questions of law and fact common to the putative class predominate over any questions affecting only individual members.

32. The claims of the Plaintiffs are typical of the claims of the putative class.

33. The Plaintiffs and their counsel will fairly and adequately protect the interests of the putative class.

34. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

35. A class action is superior to other available methods for the fair and efficient

adjudication of the controversy.

36. Upon information and belief, many of the members of the putative class are residents of the State of New York.

37. DaVita owns, and simultaneously operates its facilities throughout multiple states, including New York.

38. The additional persons who may become plaintiffs in this action are/were employees who worked as direct patient nurses and technicians for DaVita in New York, within the last six years, who held non-exempt direct patient nurse and technician positions similar to Plaintiffs and who worked in excess of forty (40) hours during one or more work weeks during the relevant time periods, but who did not receive proper pay at one and one-half times their regular rate for their hours worked in excess of forty (40) hours.

39. At all times material hereto, the work performed by the Plaintiffs was directly essential to the business performed by DaVita.

## COMMON FACTUAL ALLEGATIONS

40. DaVita is one of the largest providers of kidney care services in the United States and has been in the dialysis business for more than 20 years.

41. It employs specialized nursing and technician care to ensure the health and well-being of each of its patients.

42. To provide continuous medical services to its patients, DaVita employs thousands of nurses, technicians, and other employees throughout the United States.

43. Based on information and belief, DaVita has employed thousands of nurses and technicians during the applicable NYLL six-year period.

44. Plaintiffs and Class/Collective Action members are regularly scheduled to

work numerous six-hour shifts per week at DaVita. However, Plaintiff and the class members have the option to pick up additional shifts, and frequently do so.

45. In Plaintiff's case, she was regularly scheduled to work over 40 hours a week, and in some instances.

46. Plaintiff and class members regularly worked more than 40 hours per week at DaVita.

47. Plaintiff alleges that as a result of a common policy and/or practice equally applicable to her and to every member of the Class Action, Defendant failed to pay them at the time-and-one-half overtime rate required by New York law for work performed in those weeks in which they worked more than forty (40) hours in a week, and also to pay them for all regular hours worked, to the extent the unpaid time alleged herein constitutes hours under forty (40) in a workweek.

48. Specifically, Plaintiff and the class members were not compensated at any rate whatsoever for time during their six-hour shifts worked when Plaintiff and the Class/Collective Action members were clocked out for meal breaks that were routinely interrupted or subject to interruption to perform work for DaVita during their breaks.

49. Moreover, on numerous occasions Plaintiff and Class/Collective Action members clocked out for breaks lasting less than 20 minutes, without compensation.

50. Regardless of whether this short break was intended to serve as a meal break, but was cut short due to an interruption, such short breaks are compensable time under the NYLL and FLSA.

51. Furthermore, Defendant's failure to provide compensation for such short breaks was a violation of the NYLL and the FLSA in weeks where Plaintiff and

Class/Collective Action members worked more than forty (40) hours in a workweek, as Plaintiff and Class Action members did not receive all overtime pay due to them, and a violation of the NYLL in weeks in which Plaintiff and Class Action members worked less than forty (40) hours in a workweek, as they did not receive all regular wages due.

52. For example, in the workweek which encompassed December 7, 2022, through December 10, 2022, Plaintiff worked and was paid for in excess of forty (40) hours, but was not paid for a 20 minute rest break, which, if compensated, would have been hours over forty, and due at an overtime rate.

53. Upon information and belief, in that same workweek, based on her typical schedule at DaVita, Plaintiff was also interrupted during her lunches on one or more days during the workweek, such that the meal period was compensable, and also constituted hours over forty, which should have been paid at an overtime rate.

<u>Uncompensated Work During Meal Breaks.</u>

54. DaVita generated its payroll documentation for Plaintiff and class members by using PeopleNet time management software.[1]

55. The hours to be paid were tracked by PeopleNet.

56. Plaintiff and the Class/Collective Action members clocked in/out for their required 30-minute meal breaks from many six-hour shifts worked, or were clocked out by a manager, as a matter of Defendant's policy and/or practice.

57. Each pay period, the amount of time tracked by the software, was uploaded for processing into the payroll processing software.

[1] Defendant has transitioned to KRONOS.

58. All of DaVita's hourly-paid direct patient care nurses and technicians are and were subject to Defendant's policy of failing to compensate for time classified as a meal period in DaVita's payroll system.

59. Plaintiffs anticipate that Defendant will argue that these deductions were warranted, to account for uninterrupted lunch breaks of at least thirty minutes, during which no work was performed and for which no compensation is owed.

60. In fact, however, Plaintiff and her nurse and technician colleagues routinely worked through their lunch breaks, and even when they did manage to spend a few minutes eating, that time was regularly interrupted by other nurses and technicians on duty, nurse managers, patients' families, and other DaVita staff.

61. The interruptions were so frequent that the nurses and technicians were always "subject to interruption," and never truly relieved of their job duties and responsibilities during the purported meal breaks.

62. Defendant is and was familiar with the demands of the health care industry in general and of providing medical services at DaVita specifically, and that Defendant deliberately chose to keep its labor costs down by staffing an insufficient number of personnel per shift.

63. Rather than hiring and staffing a sufficient number of nurses and technicians per shift to allow the nurses and technicians to take full, uninterrupted meal breaks, Defendant required and permitted these overworked nurses and technicians to work during their meal breaks for the benefit of Defendant.

64. Defendant knew and expected that Plaintiff and class members would work through their unpaid "meal breaks," and this was in fact a daily occurrence at DaVita.

65. Defendant's supervisors and management routinely interrupted the meal breaks of Plaintiff and Class/Collective Action members and made work demands upon them.

66. Defendant's supervisors and management were actively involved in scheduling the shifts worked by Plaintiff and the Class/Collective Action members, and they had actual knowledge that their staffing and work policies were causing Plaintiff and class members to work through meal breaks to the predominant benefit of Defendant.

67. Plaintiff and Class/Collective Action members were expected to complete orders on assigned patients, to answer calls, to respond to medical emergencies, to advise other staff on patient care and status issues, to answer questions from DaVita staff or family members, and in general to respond immediately to work demands during "meal breaks."

68. Defendant knew and/or had reason to know that Plaintiff and Class/Collective Action members performed work during their unpaid "meal breaks."

69. Defendant required Plaintiff and Class/Collective Action members to remain available to respond to work demands at any time during the shift, including during meal breaks.

70. Plaintiff and Class/Collective Action members performed work for Defendant during the unpaid meal breaks in plain sight of Defendant's management, quite often at Defendant's management's specific request.

71. Despite Defendant's actual knowledge that Plaintiffs and Class/Collective Action members worked during supposed "meal breaks," Defendant willfully failed to compensate Plaintiff and Class/Collective Action members for such work, electing instead to accept the benefits of Plaintiff's and the Class/Collective Action members' work without compensating them for such work.

72. Given that Defendant's supervisors and managers knew from direct observation and from their general knowledge of DaVita's operations that Plaintiff and Class/Collective Action members: (a) regularly worked through the meal break time without compensation; and (b) regularly accumulated overtime hours even after deduction of the uncompensated thirty minute per shift, Defendant had both actual and constructive knowledge that Plaintiff and Class Action members were not being compensated for meal periods worked at any rate whatsoever, much less at the agreed hourly rate or at the state mandated time-and-one-half rate required for overtime.

Uncompensated Rest Breaks.

73. Under both the NYLL and FLSA, employers are not legally required to provide short rest breaks for their employees, but if they do, these short breaks (typically 5-20 minutes) must be considered "time worked" and therefore paid.

74. This means that any short time away from the job, such as for the bathroom or a coffee break, must be compensated.

75. In other words, when employers do offer short breaks (usually lasting about 5 to 20 minutes), New York law and the FLSA considers the breaks as compensable work hours that would be included in the sum of hours worked during the workweek and considered in determining hours (and overtime hours) worked.

76. On a multitude of occasions Plaintiffs and Class/Collective Action members were denied compensation for rest break periods of less than 20 minutes in duration.

77. Such rest breaks are easily identifiable by reference to Defendant's time and pay records.

78. This had the effect of depriving nurses and technicians of overtime

compensation due to them under the NYLL and FLSA in the weeks in which they worked more than forty (40) hours in a week, and of regular compensation due under the NYLL in weeks in which they did not work more than forty (40) hours.

79. It is immaterial with respect to compensability of such breaks whether the employee drinks coffee, smokes, goes to the rest room, etc.

80. Accordingly, regardless of whether a short break was intended to serve as a meal break, but was cut short due to an interruption, the rest periods of fewer than twenty minutes taken by Plaintiffs and Class/Collective Action members were compensable.

Calculation of Damages.

81. Evidence reflecting the number of uncompensated meal break and rest break hours worked by each Class/Collective Action member, as well as their applicable regular and overtime rate, is in the possession of Defendant.

82. Actual damages can be calculated easily once Defendant has produced complete payroll records for the class.

83. First, the absence of a bona fide meal break makes all unpaid meal break time compensable, and all that remains is to establish the number of shifts worked by Class/Collective Action members in the weeks and/or the number of shifts worked by Class/Collective Action members in which they worked more than 40 hours.

84. Each shift worked in which a Class/Collective Action member clocked out for a meal break will entitle class members to compensation for hours deducted as “meal breaks” at the applicable rate (straight time or overtime), depending upon whether the week in question is one in which forty or more hours were worked.

85. Second, based on information and belief, Defendant’s pay and time records will show many instances when Plaintiff and Class/Collective Action Members clocked out

for breaks of less than 20 minutes in duration, for which time they were not compensated.

86. Regardless of the purpose of these rest breaks, *e.g.*, whether or not they were meal breaks that were cut short due to interruption, this was compensable time.

87. The information needed to calculate damages—specifically the dates of the shifts worked, the total number of hours worked per week, and the base hourly rate of pay for each worker—exists in Defendant's timekeeping and payroll databases.

88. The damage calculation itself will be a straightforward accounting process.

**COUNT I**
**RECOVERY OF OVERTIME COMPENSATION UNDER THE NYLL**

89. Plaintiff incorporates by reference as though fully set forth here, paragraphs 1–88.

90. At all relevant times, Plaintiff and those similarly situated were employee and Defendant has been an employer within the meaning of the NYLL.

91. The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendant.

92. Defendant has failed to pay Plaintiff and those similarly situated the overtime wages to which they were entitled under the NYLL.

93. By Defendant's failure to pay Plaintiff and those similarly situated overtime wages for hours worked in excess of forty (40) hours per week, it has willfully violated NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, including but not limited to, the regulations in N.Y. Comp. Code R. & Regs., tit. 12 § 142.

94. Due to Defendant's violations of the NYLL, Plaintiff and those similarly

situated are entitled to recover from Defendant, their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**COUNT II**
**RECOVERY OF OVERTIME COMPENSATION UNDER THE FLSA**

95. Plaintiff incorporates by reference as though fully set forth here, paragraphs 1–88.

96. At all relevant times, Plaintiff and those similarly situated were employees, and Defendant has been an employer within the meaning of the FLSA.

97. The overtime wage provisions of the FLSA and its supporting regulations apply to Defendant.

98. Defendant has failed to pay Plaintiff and those similarly situated the overtime wages to which they were entitled under the FLSA.

99. By Defendant's failure to pay Plaintiff and those similarly situated overtime wages for hours worked in excess of forty (40) hours per week, it has willfully violated the FLSA.

100. Due to Defendant's violations of the FLSA, Plaintiff and those similarly situated are entitled to recover from Defendant, their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, pre-judgment interest to the extent liquidated damages are not awarded, and post-judgment interest.

**COUNT III**
**QUANTUM MERUIT (PLED IN THE ALTERNATIVE)**

101. Plaintiff incorporates by reference as though fully set forth here, paragraphs 1-88.

102. Plaintiff and the other members of the putative class have performed numerous and valuable services at the request and for the benefit of the Defendant.

103. The reasonable value of those services for which Plaintiff and the other members of the putative class have not been paid is believed in an amount to be determined at trial, plus interest, costs and professional fees.

104. Plaintiff and the other members of the putative class seek payment from the Defendant for the reasonable value of services provided to the Defendant.

105. The Defendant has failed to pay the Plaintiff at the promised rate for such hours they suffered/permit them to work off-the-clock.

106. By reason of the foregoing, the Defendant is liable to Plaintiff and the other members of the putative class in an amount to be determined at trial, plus interest and professional fees.

**COUNT IV**
**UNJUST ENRICHMENT (PLED IN THE ALTERNATIVE)**

107. Plaintiff incorporates by reference as though fully set forth here, paragraphs 1-88.

108. Plaintiff and the other members of the putative class have performed a significant amount of work for which they have not been paid.

109. Defendant retained the benefit of that work, notwithstanding the fact that they failed to pay Plaintiff and those similarly situated for same.

110. Specifically, Defendant provided a higher level of service to its patients and/or was able to comply with all laws and regulations governing their services provided due to the off-the-clock work of Plaintiff and those similarly situated.

111. As a result of the Defendant's failure to pay wages for the off-the-clock work Plaintiff and those similarly situated performed, Defendant was unjustly enriched for work and services performed by Plaintiffs and the other members of the putative class in an amount to be determined at trial, plus interest and professional fees.

112. By reason of the foregoing, Plaintiff and the other members of the putative class have been damaged in an amount to be determined at trial, plus interest and professional fees.

**COUNT V**
**FAILURE TO PAY WAGES**

113. Plaintiff incorporates by reference as though fully set forth here, paragraphs 1-88.

114. The wages and overtime compensation not paid to the Plaintiff and the other members of the putative class were wages within the meaning of New York Labor Law §§ 190, 198 and 198(1-a).

115. Defendant violated New York Labor Law § 191 by failing to timely pay to Plaintiff and the other members of the putative class the statutorily and contractually required wages and overtime compensation for the work they performed off-the-clock, as alleged herein.

116. By reason of the foregoing, the Defendants are liable to Plaintiff and the other members of the putative class in an amount to be determined at trial, plus liquidated damages, and interest, attorneys' fees and costs.

**COUNT VI**
**FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS**

117. Plaintiff incorporates by reference as though fully set forth here, paragraphs

1-83.

118. Defendants failed to supply Plaintiff and those similarly situated with accurate statements of wages as required under the NYLL, Article 6, § 195(3).

119. Specifically, Defendants failed to provide an accurate number of hours worked by Plaintiff and those similarly situated because Defendants failed to list the time Plaintiff and those similarly situated worked or her regular rate of overtime rates of pay, when it failed to include all hours worked on her wage statements due to the failure to include compensable meal and rest periods.

120. Through their knowing or intentional failure to provide Plaintiff and those similarly situated with the accurate wage statements required under the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq*., and the supporting New York State Department of Labor Regulations.

121. As a result of Defendant's failure to provide Plaintiff and those similarly situated with accurate wage statements, Plaintiff and those similarly situated have suffered mental distress and anguish, because she has been unable to ascertain amounts due to her under the NYLL versus those paid and has been left to question how much money she has been underpaid.

122. Due to Defendant's willful violations of NYLL, Article 6, § 195(3), Plaintiff is entitled to statutory penalties, reasonable attorneys' fees, costs, and injunctive relief and declaratory relief, as provided for by NYLL, Article 6, §198(1-d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of those similarly situated, prays for the following relief:

A. Certifying one of more class actions consistent with Article 9 of the CPLR;

B. Certifying one or more collectives under the FLSA;

C. Awarding Plaintiff and those similarly situated unpaid wages due under the NYLL;

D. Awarding Plaintiff and those similarly situated unpaid overtime under the NYLL and FLSA;

E. Awarding Plaintiff and those similarly situated 100% liquidated damages;

F. Awarding Plaintiff and those similarly situated statutory penalties due to Defendant's failure to provide accurate wage statements in violation of the NYLL;

G. Awarding Plaintiff and those similarly situated Pre-judgment interest;

H. Ordering any other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: September 14, 2026.

Respectfully submitted,

***/s/ Andrew R. Frisch***
ANDREW R. FRISCH
**MORGAN & MORGAN, P.A.**
8151 Peters Road, Suite 4000
Plantation, FL 33324
T: (954) WORKERS
F: (954) 327-3013
E-mail: afrisch@forthepeople.com
***Attorney for Plaintiffs and the Class***